KEFFALAS, INC., D. B. A. DEO'S CORNER LUNCH, ET AL., APPELLANTS, v. LIQUOR CONTROL COMMISSION, APPELLEE.

[Cite as Keffalas, Inc., v. Liquor Control Comm. (1974), 41 Ohio Misc. 151.]

(Nos. 74-238 and 74-240—Decided September 10, 1974.)

Court of Common Pleas for Richland County.

*Mr. Charles H. Huston*, for appellants.

*Mr. Richard D. Banks*, assistant attorney general, for appellee.

MAYER, J. In November 1969, an Ohio statute became effective which provided a procedure to allow the sale of alcoholic beverages on Sunday by permit holders in such areas who by election permitted such sales. R. C. 4301.351 provides that the sale on Sundays be submitted at a special election to be held at the same time as the general election.

R. C. 4301.37 provides that when a local option election is held in any district under the section referred to in the above paragraph, the result of such election shall be effective in said district until another such election is called and held, pursuant to R. C. 4301.32 to 4301.361, inclusive, but no such election shall be held in any district "more than once in each four years * * *." Under the Liquor Control Law a "residence district" is defined as consisting of two or more contiguous election precincts. Reference to the above sections is made herein for their relation to the questions as will herein be raised.

In the city of Mansfield there were, prior to 1973, four such elections held:

In 1970, precincts 1-B and 1-K in which the issue was defeated,

In 1971, precincts 3-C and 5-H in which the issue passed,

In 1972, precincts 5-A and 5-B and a second election in 5-E and 5-F, both of which issues were defeated.

A redistricting of the wards and precincts in Mansfield was made in 1973. Litigation resulted, and the Supreme Court of Ohio approved same as effective for the fall election in October, 1973. Now a petition was circulated in the newly designated precincts 6-A and 6-D. The board of elections placed on the ballot at the general election in 1973 the question whether Sunday sales should be permitted in these precincts. This issue was defeated.

Now, please continue to keep in mind the rest of the picture: Precincts 6-A and 7-D (the new precincts) encompassed all of the territories occupied by former precinct 5-B and parts of 5-A, 5-E, 5-F, 5-H, and 3-C, as those precincts existed prior to 1973, which precincts previously voted on

this same question in 1971 or in 1972, within four years of this proposed election.

Appellants at their respective locations hold permits from the state liquor department and operate thereunder. The locations thereof being in the reconstructed precincts area above referred to as being that place where the board of elections placed on the 1973 general election question of permitting or denying sales. In 1974, the Department of Liquor Control gave notice to appellants requesting cancellation of the D-6 permits and advised that an appeal from this decision may be filed with the Liquor Control Commission within 30 days after date of letters. Appellants gave notice of appeal within time from the decision. In May of 1974, the Liquor Control Commission dismissed the claims for the reason that it "lacked jurisdiction over the subject matter of the appeal."

The Attorney General and counsel for appellants admit this matter and the question presented is a case of first impression in Ohio in that there seems to be no precedent of a case involving a change of precinct boundaries and dual elections under R. C. 4301.351. What is the effect of the election of 1973 upon the licenses issued by the Department of Liquor Control, pursuant to the election of 1971?

When the Liquor Control Commission held they lacked jurisdiction of the subject matter of the appeal, it appears they concede it is not up to them to give an authoritative answer to the license holders herein as to Sunday sales. Further, they do not indicate by argument or pleading that this is an action against the Board of Liquor Control, the Director of Liquor Control, or the Department of Liquor Control. This action does not purport to be such action. It is more in the nature of a declaratory judgment request for a polar star to guide the participants. The unusual nature of this action is pointed out in a motion filed June 17, 1974 wherein the Attorney General stated: "* * * due to the unusual nature of the subject of this appeal * * *." It is not contended that R. C. 4301.31 applies to the instant case. However, this court holds that said section would not be applicable to the particular facts and circumstances

of this case. Even if it did, this court would be inclined to hold it had been waived and the matter being submitted by consent and agreement, this latter holding being unnecessary. See *Canton* v. *Imperial Bowling Lanes* (1968), 16 Ohio St. 2d 47.

In the *Canton* case, *supra*, the Supreme Court said: "It is difficult to perceive any real interest that the department would have in whether the permit, which it had issued to defendant, authorized sales of intoxicating liquor by defendant. It is obvious that the party really interested in that question is defendant."

In construing and applying the various statutes which may have application herein under the Liquor Control Law this court has followed the sensible guide established by the Supreme Court in *State, ex rel. Cooper*, v. *Savord* (1950), 153 Ohio St. 367, where it is stated that the General Assembly will not be presumed to have intended to enact a law producing unreasonable or absurd consequences. It is the duty of the courts, if the language of a statute fairly permits, or unless restrained by the clear language thereof, to construe the statute as to avoid such a result.

After this case was submitted this court has carefully reviewed the record and all citations given by all counsel and given due consideration to final arguments. Mr. Bricker, Director of the Board of Elections, testified regarding the 1971 election in precincts 3-C and 5-H, that in 1973 part of this territory became a part of precinct 6-A. This said 6-A, as designated in 1973, consisted also of parts of 5-A and 5-B in which a prior election for Sunday sales had been held and the issue defeated, and also consisted of territory which had not voted in a prior election. The issue of Sunday sales for precincts 6-A and 7-D was defeated. It is conceded no regulations or decision has been adopted or made by the Department of Liquor Control concerning the effect of redistricting, and the particular problem herein involved does not appear to be covered by present statutory law of Ohio. Therefore this court has carefully considered all statutes which might possibly be involved and case law

which may have logical causal or reasonable connection with the principles or problems herein involved.

A court in deciding a case without guiding case or statutory law must consider the various routes that could be taken, and must be cautious not to jump at every first-blush conclusion, like the uncertainty of a boat's direction without a rudder.

Let us briefly consider several possible answers:

First, that the election of 1973 is controlling as to the territory involved. Now, this answer would mean that any change in precinct designation or boundaries creates a new residence district as defined in R. C. 4301.32. Such solution appears very undesirable and would be contrary to the intent of R. C. 4301.37. In the *per curiam* opinion, *State, ex rel. Waterloo Brown Derby Restaurant*, v. *Bd. of Elections* (1973), 34 Ohio St. 2d 259, the brief opinion reads:

"The word 'district,' as used in R. C. 4301.37, must be held to include all precincts making up any residence district in which a local option election has been held pursuant to petitions filed in compliance with R. C. 4301.33 so as to prevent the holding of another such election more often than once in each four-year period in any part of that district.

"To hold otherwise would be to grant petitioners the opportunity to achieve election results favorable to their views by a continuous juggling of precincts under a claim than new districts are created, and thus defeat the apparent intent of the General Assembly to achieve some stability in such matters. * * *"

Second that with respect to the status of areas involved in prior elections that such status remains unchanged and the election only affects territory that has not been involved in an election in the past four years.

Third, that the election was invalid under R. C. 4301.-351 and is of no force and effect.

Probably the solution contained in "second," is in line and conformity to the reasoning in *Canton* v. *Imperial Bowling Lanes, supra* (16 Ohio St. 2d 47), in discussing the problem of the local status of territories annexed to municipal

156

corporations. This solution and answer seems the proper one and is the one to be adopted by this court in the instant case.

The "third" solution or conclusion would require the Board of Liquor Control and the director to make a determination as to validity of each local option election. The board indicated, this court observes, in its decision that it can not make such determination. However, notice is given the board of the filing of the petition and the determination of its efficiency at the time of its filing with the board of elections under R. C. 4301.39, and the Board of Liquor Control would be in a position to protest the election board's decision if the election was irregular or held prior to the electable statutory time.

We must not lose sight of the fact in considering elections under statutes that they can be valid or invalid ones. It is the opinion of this court that the election of November 6, 1973, cannot be a valid election so as to deprive appellants of their rights, as such would not be by due process of law.

Counsel for the Liquor Control Commission, in argument to the court, chose to ignore the numerous statutes this court feels are relative to a determination of our instant question, and placed great emphasis on two statutes: R. C. 4301.39 and 4301.391. The first is concerned primarily, as its title states, with "notification of election results; disposition of permit." The section is more in the nature of clerical procedure and assumes conclusions that every procedure and election result was valid and within the contemplation of related statutes. R. C. 4301.391, reads, in part: "* * * brought about by a local option election pursuant to Sections 4301.32 to 4301.41, inclusive, and 4305.14 of the Revised Code." It is obvious the 1973 Mansfield election was not valid and effective as relating to appellants, within the intent of the General Assembly. Therefore, it cannot be said that these two sections, *supra*, are controlling in our instant case.

By the plain reading of R. C. 4301.37 entitled, "local option election effective for four years; exception," the

last 17 words of the statute reading, "* * * but no such election shall be held in any district more than once in each four years," the November 6, 1973, election cannot prejudicially affect the prior rights of appellants. It is unnecessary for this court to evaluate possible consequences that might occur as a result of said election had it been different. Now, what if the issue in this election, the 1973 election, had passed? Would it then be contended by counsel for appellee that establishments that are presently in precincts 6-A and 7-D should be granted licenses in spite of the defeat of such an issue by the voters in the prior election?

It is the conclusion and decision of this court that where a valid election under R. C. 4301.351 is held in a residence district and pursuant to such election licenses are issued, such licenses remain valid until a future election is held involving that territory, or part of that territory, four or more years after the enabling election, and that any election held prior to such time affects only that part of the residence district which did not vote in the prior election.

Therefore, the status of Leo G. Keffalas, Inc. and Thelma Boubary d. b. a. R-Bar, appellants herein, remains unchanged, and the last election only affects territory that has not been involved in an election in the past four years.

It is very doubtful that the particular issue involved in this litigation could have been raised by protest or contest. There could be questions raised under the election laws as to eligibility of appellants as electors. There is the requirement of a designated number of signatures of persons who voted in said election. It appears the judgment of the court under the election statutes would be something other than the answer to the issue in our present litigation. Under R. C. 3515.14, it is stated: "Upon completion of the trial of a contest of election, the court shall pronounce judgment as to which candidate was nominated or elected or whether the issue was approved or rejected by the voters * * *."

*Judgment accordingly.*